UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MALCOLM JEMMOTT,

                            Plaintiff,

                                                                    9:13-CV-1020
v.                                                                    (FJS/TWD)

ERIC VAN ALLEN, SHUMER,
JOHN TREMPER,

                            Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

MALCOLM JEMMOTT
Plaintiff pro se
Ulster County Jail
380 Boulevard
Kingston, NY 12401

COOK, NETTER, CLOONAN,
KURTZ & MURPHY, PC                             ERIC M. KURTZ, ESQ.
Attorneys for Defendants
P.O. Box 3939
85 Main Street
Kingston, NY 12402

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

     This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Frederick J. Scullin, Jr.,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Malcolm Jemmott claims that Defendant Detectives Eric Van Allen and Edward A.

Shuman, Jr.,[1] subjected him to excessive force when he was detained at the City of Kingston Police Headquarters and that Defendant Lieutenant John Tremper failed to protect him from that force. (Dkt. No. 1.) Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 29.) For the reasons discussed below, I recommend that the Court deny the motion as to the excessive force claims against Defendants Van Allen and Shuman and grant the motion as to the failure to intervene claim against Defendant Tremper.

I.  **FACTUAL AND PROCEDURAL SUMMARY**

The incident at issue occurred at the headquarters of the City of Kingston Police Department on September 17, 2010. (Dkt. No. 29-9 ¶¶ 4-5.) Plaintiff had been arrested, taken into custody, processed, and placed in a holding cell pending arraignment. (Dkt. No. 29-9 ¶¶ 4-5.) Plaintiff arrived at headquarters at approximately 1:30 p.m. (Dkt. No. 29-8 ¶ 8.)

In his verified complaint, Plaintiff alleges that Defendant Van Allen punched him in the face and threw him down in a holding cell. (Dkt. No. 1 at 4, 5.) He alleges that Defendants Van Allen and Shuman hit him around the head and neck repeatedly with rolled up phone books in an interrogation room. *Id.* Plaintiff alleges that this use of force was "unprovoked." *Id.* at 4. He alleges that he was handcuffed when it occurred. *Id.* at 5. Plaintiff alleges that Defendant Lieutenant John Tremper heard him screaming and did nothing to stop the assault. *Id.* Plaintiff alleges that, as a result of the incident, he suffered from internal bleeding in his head and brain. *Id.* at 4. He alleges that the incident has "changed [his] life forever." *Id.* at 6.

---

[1] This defendant is named in the complaint and listed in the caption as "Shumer." The Clerk is directed to correct the caption to reflect that his name is actually Edward A. Shuman, Jr. (Dkt. No. 29-10.)

Defendant Tremper declares that Plaintiff was the only individual being detained in a holding cell when he arrived at 3:00 p.m. for his shift. (Dkt. No. 29-8 ¶¶ 5-6.) Defendant Tremper declares that, pursuant to his usual custom and practice, he checked on Plaintiff every twenty to forty minutes during his shift. *Id.* ¶ 7. Defendant Tremper declares that he heard Plaintiff "yelling for someone" sometime in the late afternoon. *Id.* ¶ 11. Defendant Tremper directed non-defendant Officer Kurz to find out what Plaintiff wanted. *Id.* Officer Kurz returned to Defendant Tremper's office and indicated that Plaintiff was asking to speak to Defendant Van Allen. *Id.* Defendant Tremper directed Officer Kurz to go upstairs to Defendant Van Allen's office and advise him of Plaintiff's request. *Id.*

Defendant Van Allen and Defendant Shuman declare that at 6:00 p.m., Officer Kurz approached and advised them that Plaintiff wanted to speak to Defendant Van Allen to provide some information. (Dkt. No. 29-9 ¶¶ 5-6; Dkt. No. 29-10 ¶ 6.) Defendant Van Allen declares that he proceeded downstairs with Defendant Shuman and advised Defendant Tremper that he was taking Plaintiff from the holding cell to an interview room on the second floor. (Dkt. No. 29-9 ¶ 6.) Defendant Van Allen declares that Plaintiff was moved from the holding cell to the interview room at approximately 7:00 p.m. *Id.* ¶ 7. Defendant Van Allen declares that although Plaintiff was initially handcuffed, he asked Defendant Shuman to remove the handcuffs for the interview process. *Id.* Defendant Van Allen declares that, to the best of his recollection, Plaintiff accepted a bottle of water and some chips before the interview began. *Id.* After that, Plaintiff was given his *Miranda* warnings and the officers began taking his statement, which was recorded on tape. *Id.*

According to the transcript, Defendant Van Allen ("DV") and Plaintiff ("MJ") had the

following exchange toward the end of the interview:

> DV: [S]ince you've been taken into custody by myself and other members of the department today, how have you been treated?
> MJ: Fairly . . . .
> DV: [W]ere you given an opportunity to use the rest room?
> MJ: Yes.
> DV: Yes, okay. And since that time, um, have you been given something to eat?
> MJ: Yes.
> DV: Okay. Have you been provided with something to drink?
> MJ: Yes.
> DV: So, for the most part, how would you say you've been treated by us since you've been here?
> MJ: Can't complain. I mean, I'm in jail.

(Dkt. No. 29-7 at 15:15-16:9.) In opposition to the motion for summary judgment, Plaintiff states that he "was placed in [a] chair handcuffed and pummeled about the head and neck area until [the] statement was done." (Dkt. No. 35 at 8.) The Court notes that the transcript does not convey what tone of voice Defendants and Plaintiffs used, and that their statements could be interpreted in a variety of different ways depending on vocal tone.

Defendant Van Allen and Defendant Shuman declare that they never struck Plaintiff with a rolled up phone book or any other object. (Dkt. No. 29-9 ¶ 8; Dkt. No. 29-10 ¶ 8.) They declare that they "never assaulted" Plaintiff. *Id.* They declare that they never observed each other or any other police officer strike Plaintiff. *Id.* They declare that they never observed any physical injuries to Plaintiff during the time that he was in the custody of the City of Kingston Police Department. *Id.* They declare that Plaintiff never complained of excessive force. *Id.*

Defendant Tremper declares that he does "not know if Detective Van Allen spoke to Mr. Jemmott in the holding cell area or in an interview room. I never saw Detective Van Allen with Mr. Jemmott outside of his holding cell nor did I ever hear any conversation between Detective

4

Van Allen and Mr. Jemmott." (Dkt. No. 29-8 ¶ 12.) He declares that he continued with his duties for the rest of his shift, checking on Plaintiff regularly. *Id.* ¶ 13. He declares that he never observed any physical injury on Plaintiff. *Id.* He declares that Plaintiff never complained of any physical injury. *Id.* He declares that "[a]t no time did I ever see or even hear the sounds of anyone assaulting Mr. Jemmott while he was in his holding cell nor did I hear or see anyone striking Mr. Jemmott with a rolled up telephone book while he was in an interview room." *Id.* ¶ 15.

Sometime after the alleged incident, Plaintiff was transferred to the Ulster County Jail. (*See* Dkt. No. 35 at 9.) On September 26, 2010, Plaintiff submitted a sick call request asking to be seen regarding "headaches severe skin problems have [eczema]." *Id.* at 10. Plaintiff was seen in response to the sick call request. *Id.* Under "assessment," the medical care provider's note appears to read "Rash - Back. Head Injury. 2 weeks old." *Id.* The words "Head Injury," however, are at the end of a line and may be in a darker print and a different handwriting than the rest of the notation. Defendants object to the Ulster County Jail medical records as "not in admissible form" and note that they "do not indicate the presence of any physical trauma to any part of the body other than an unrelated rash on plaintiff's back." (Dkt. No. 36 ¶ 3.) According to the documents submitted by Plaintiff, he continued to regularly complain of headaches after that first sick call request. (Dkt. No. 35 at 11-42.)

Plaintiff was seen at the Westchester Medical Center on November 3, 2011. (Dkt. No. 29-6 at 7.) Plaintiff complained of headaches consistently over the past year, which he rated as a seven or eight out of ten on the pain scale. *Id.* An MRI taken that day revealed a small aneurysm. *Id.* at 8. It was determined that surgery was not necessary. *Id.* Plaintiff was

5

prescribed medication. *Id.* Plaintiff was discharged back to his correctional facility on November 7, 2011. *Id.* at 9.

On November 22, 2011, Plaintiff submitted a grievance to the New York State Commission of Correction. (Dkt. No. 29-6 at 34-36.) He stated that he had been beaten by police officers on September 17, 2010. *Id.* at 35. He alleged that he had reported the beating and had filed "numerous sick call slips" regarding painful headaches and dizziness, but that these requests had been ignored. *Id.*

Plaintiff was admitted to the emergency room at the Albany Medical Center on May 16, 2012. (Dkt. No. 29-6 at 1.) He reported "chronic headaches on and off since 2010 in September which he believes is secondary to assault." *Id.* An MRI taken earlier that day "showed a 6-cm aneurysm at left vertebral artery anterior to the medulla with a diffusively ectatic artery and a 3-mm basillar tip aneurysm." *Id.* There were concerns about a leak secondary to the aneurysm. *Id.* Neurosurgery evaluated Plaintiff and opined that he did not require surgery and was stable enough to be released back to the correctional facility. *Id.* at 3.

Plaintiff filed the complaint in this action on August 21, 2013. (Dkt. No. 1.) Defendants now move for summary judgment. (Dkt. No. 29.) Plaintiff has opposed the motion. (Dkt. No. 35.) Defendants have filed a reply. (Dkt. No. 36.)

## II.    LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that

no genuine issue of material fact exists. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Id*. at 273. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 & n.11 (1986). Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material[2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## III. ANALYSIS

### A. Excessive Force

Plaintiff claims that Defendants Van Allen and Shuman subjected him to excessive force. (Dkt. No. 1.) Defendants move for summary judgment of these claims. (Dkt. No. 29-3 at 7-12.) For the reasons discussed below, I recommend that the Court deny Defendants' motion for summary judgment of these claims.

Plaintiff was a pretrial detainee at the time of the alleged incident. (Dkt. No. 29-9 ¶ 5.) "[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *United States v. Walsh*,

---

[2] A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson*, 477 U.S. at 248.

194 F.3d 37, 47 (2d Cir. 1990.) In the Second Circuit, the standard set forth in *Hudson v. McMillian*, 503 U.S. 1 (1992) for Eighth Amendment excessive force claims by convicted prisoners is also applicable to excessive force claims brought under the Fourteenth Amendment by pretrial detainees. *Walsh*, 194 F.3d at 48 ("We conclude that the *Hudson* analysis is applicable to excessive force claims brought under the Fourteenth Amendment.").[3] Under the *Hudson* analysis, when prison officials are "accused of using excessive physical force . . . , the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In making this determination, the court should evaluate "the need for application of force, relationship between that need and the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response." *Id*. at 7 (citation and quotation marks omitted).

Here, Plaintiff states in his verified complaint[4] and in an affidavit filed in opposition to

---

[3] The Supreme Court will be considering this issue during this Term in the case of *Kingsley v. Hendrickson*, No. 14-6368. Oral argument is set for April 27, 2015. *Merits Cases*, SCOTUS BLOG, http://www.scotusblog.com/case-files/cases/kingsley-v-hendrickson (last visited Mar. 10, 2015).

[4] Defendants assert that Plaintiff's complaint is "unverified" and argue that Plaintiff cannot oppose the motion "by relying merely on the allegations of [the] complaint." (Dkt. No. 29-3 at 9, 13.) Plaintiff's complaint is verified. The final page of the complaint states, "I declare under penalty of perjury that the foregoing is true and correct." (Dkt. No. 1 at 6.) That statement is followed by the date and Plaintiff's signature. *Id.* Under 28 U.S.C. § 1746, a declaration made "in substantially the following form: . . . 'I declare . . . under penalty of perjury that the foregoing is true and correct'" qualifies as a sworn affidavit or declaration. A court can consider a plaintiff's statements in a verified complaint as evidence. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that the plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified

the motion for summary judgment that Defendant Van Allen and Shuman "assaulted him" and "pummeled [him] about the head and neck area with rolled up phone books" and that the use of force was "unprovoked." (Dkt. No. 1 at 4-5; Dkt. No. 35-1 at 1.) He states in opposition to the motion for summary judgment that he "was placed in [a] chair handcuffed and pummeled about the head and neck area until [the] statement" in which he 'admitted' to being treated "fairly" was completed. (Dkt. No. 35 at 8.)

Defendants Van Allen and Shuman declare, on the other hand, that they never used force on Plaintiff. (Dkt. No. 29-9 ¶ 8; Dkt. No. 29-10 ¶ 8.) Defendants further argue that Plaintiff's version of events is not credible because Plaintiff did not make any formal complaint about excessive force until November 22, 2011, there are no photographs documenting physical injury, there are no sick call slips indicating injury, and the transcript of Plaintiff's interview states that he said he had been treated "fairly" at police headquarters. (Dkt. No. 29-3 at 7-12.)

These competing versions of what transpired do not establish that either party is entitled to judgment as a matter of law. Rather, they raise triable issues of fact for a jury to determine. This is because "[c]redibility determinations . . . are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *see also Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). Therefore, I recommend that the Court deny Defendants' motion for summary judgment of Plaintiff's claims that Defendants Van Allen

---

complaint is to be treated as an affidavit for summary judgment purposes. . .") (citations omitted). Accordingly, Plaintiff can oppose Defendants' motion by relying upon the allegations of his verified complaint.

and Shuman subjected him to excessive force.

### B. Failure to Intervene

Plaintiff claims that Defendant Tremper violated his constitutional rights by failing to intervene to stop the alleged use of excessive force. (Dkt. No. 1.) Defendants move for summary judgment of this claim. (Dkt. No. 29-3 at 13-16.) For the reasons discussed below, I recommend that the Court grant Defendants' motion and dismiss this claim.

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officials in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). In order to establish liability under this theory, a plaintiff must prove that: (1) the defendant had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the defendant's position would have known that the plaintiff's constitutional rights were being violated; and (3) the defendant did not take reasonable steps to intervene. *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

Defendant Tremper flatly denies that he possessed actual knowledge of the use of force. He declares that "[a]t no time did I ever see or even hear the sounds of anyone assaulting Mr. Jemmott while he was in the holding cell nor did I hear or see anyone striking Mr. Jemmott with a rolled up telephone book while he was in an interview room" (Dkt. No. 29-8 ¶ 15.) Thus, Defendant Tremper has shown that he did not have a realistic opportunity to intervene and prevent the harm. The burden thus shifts to Plaintiff to raise a triable issue of fact.

Plaintiff has failed to meet his burden. Defendants argue that they are entitled to summary judgment of this claim because "[a]lthough plaintiff claims that [Defendant] Tremper

heard his screams, such a claim is pure speculation." (Dkt. No. 29-3 at 15-16.) Defendants are correct. Plaintiff states in his complaint that "Defendant John Tremper heard me screaming in the holding cells while his detective assaulted me." (Dkt. No. 1 at 5.) However, Plaintiff's statement is speculative. Evidence must be based on personal knowledge. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993). The complaint sets forth no basis for Plaintiff's personal knowledge of what, if anything, Defendant Tremper heard. For example, Plaintiff does not allege that he saw Defendant Tremper nearby or that Defendant Tremper ever told him that he had heard screams. Thus, Plaintiff's verified complaint fails to raise a triable issue of fact that Defendant Tremper failed to intervene.

Turning to the only other piece of evidence that Plaintiff proffers on this claim, Plaintiff declares in opposition to the motion for summary judgment that Defendant "Tremper admits to hearing Plaintiff scream." (Dkt. No. 35-1 at 2.) As discussed above, Defendant Tremper makes no such admission. Plaintiff may be referring to Defendant Tremper's declaration that "sometime in the late afternoon," he "heard Mr. Jemmott yelling for someone" and directed Officer Kurz to find out what Plaintiff wanted. (Dkt. No. 29-8 ¶ 11.) The undisputed evidence shows that this happened before Plaintiff was taken to the interrogation room where the excessive force with the phone books allegedly occurred. (Dkt. No. 29-8 ¶ 11; Dkt. No. 29-9 ¶¶ 6-7; Dkt. No. 29-10 ¶ 6.) Thus, Plaintiff has not raised a triable issue of fact that Defendant

11

Tremper possessed actual knowledge of the use by another officer of excessive force. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss this claim.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 29) be **GRANTED IN PART AND DENIED IN PART**. It is recommended that the Court grant Defendants' motion as to the failure to intervene claim against Defendant Tremper and dismiss him from the action. It is recommended that the Court deny Defendants' motion as to the excessive force claims against Defendants Van Allen and Shuman; and it is further

**ORDERED** that the Clerk amend the caption to change the name of Defendant "Shumer" to Edward A. Shuman, Jr.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: March 10, 2015
      Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge